Damian J. Martinez (SBN # 200159)
Michael Newborn (SBN # 305929)
**LEECH TISHMAN NELSON HARDIMAN, INC.**
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024
Telephone: (424) 738-4400; Facsimile: (424) 738-5080
E-mail: *dmartinez@leechtishman.com*
*mnewborn@leechtishman.com*

Attorneys for Defendants Carl Cardinalli,
Joe Curtis, and Bighorn Golf Club

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>*Ex rel.* RELATOR LLC, a California limited liability company,<br><br>Relator,<br><br>vs.<br><br>CARL CARDINALLI, an individual, JOE CURTIS, an individual, BIGHORN GOLF CLUB, a California nonprofit corporation, and DOES 1-10,<br><br>Defendants. | Case No.: 5:23-cv-00113-HDV-DTB<br><br>Assigned to Hon. Hernan D. Vera<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>Action Filed: January 23, 2023<br><br>Hearing Date: December 16. 2025<br>Time: 10:00 a.m.<br>Dept.: First Street Courthouse, 350 W. 1st Street, Courtroom 5B, 5th Floor, Los Angeles, California 90012<br><br>ORAL ARGUMENT REQUESTED |

**NOTICE OF MOTION AND MOTION TO DISMISS**

**PLEASE TAKE NOTICE** that on December 16, 2025 at 10:00 a.m. or as soon thereafter as the matter may be heard, before the Honorable Hernan D. Vera in Courtroom 5B of the United States District Court, Central District of California, located at 350 W. 1st Street, 5th Floor, Los Angeles, California 90012, Defendants Carl Cardinalli ("Defendant Cardinalli"), Joe Curtis ("Defendant Curtis"), and Bighorn Golf Club ("Bighorn") (collectively, "Defendants") will, and hereby do, move to dismiss the Amended Complaint ("FAC") filed by Relator Relator LLC ("Relator") pursuant to F.R.C.P. § 12(b)(6). Defendants move to dismiss on the grounds that: (1) the FAC is barred by the public disclosure bar set forth at 31 U.S.C. § 3730(e)(4) and (2) the FAC fails to state a claim upon which relief can be granted. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on October 6, 2025.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, Declaration of Michael Newborn ("Newborn Decl."), Request for Judicial Notice, the Court's record in this case, and such other oral and documentary evidence and argument as may be presented to the Court prior to or at the time of the hearing on the Motion.

DATED: November 4, 2025

LEECH TISHMAN NELSON HARDIMAN, INC.

By: *<u>/s/ Damian J. Martinez</u>*
Damian J. Martinez
Attorneys for Defendants Carl Cardinalli, Joe Curtis, and Bighorn Golf Club

**TABLE OF CONTENTS**

I. INTRODUCTION ....... 1
II. STATEMENT OF FACTS ....... 3
A. Background ....... 3
B. PandemicOversight.gov, the U.S. Small Business Administration (“SBA”), and ProPublica Publish Information Relating to Bighorn’s PPP Loan ....... 3
C. Forbes Publishes Information Concerning Bighorn Being a “Private Club” ....... 4
III. LEGAL STANDARD ....... 5
A. Motion to Dismiss ....... 5
B. The False Claims Act ....... 6
IV. ARGUMENT ....... 7
A. The FCA Claim is Precluded by The Public Disclosure Bar ....... 7
B. Relator is Not an Original Source ....... 11
C. Relator’s New Fraud Allegations are Conclusory and Derivative of the Original Allegations ....... 12
1. Alleged False Use of Proceeds Certification. ....... 12
2. Alleged False Loan Forgiveness Certification ....... 13
3. Alleged False Economic Necessity Certification. ....... 13
4. Dismissal of the FAC is Supported by the Court’s Decision in Kellogg ....... 15
D. Relator Fails to State a Claim Against Bighorn ....... 16
1. Relator Fails to Sufficiently Plead Fraud ....... 16
2. Relator Fails to Allege Scienter ....... 17
E. Relator Fails to State a Claim Against Defendants Cardinalli and Curtis ....... 18
V. CONCLUSION ....... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A-1 Ambulance Serv., Inc. v. California*,
202 F.3d 1238 (9th Cir. 2000) .....9

*United States v. Allergan, Inc.*,
46 F.4th 991 (9th Cir. 2022) .....2, 6, 10

*Amphastar Pharms. Inc. v. Aventis Pharma SA*,
856 F.3d 696 (9th Cir. 2017) .....11

*United States ex rel. Aryai v. Skanska*,
2019 WL 1258938 (S.D.N.Y. Mar. 19, 2019) .....12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....5, 13, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....5, 6, 13

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) .....7

*United States ex rel. Calva v. Impac Secured Assets Corp.*,
2018 WL 6016152 (C.D. Cal. June 12, 2018) .....6

*United States ex rel. CKD Project, LLC v. Fresenius Medical Care Holdings, Inc.*,
551 F. Supp. 3d 27 (E.D.N.Y. 2021) .....12

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) .....7, 18, 19

*United States. ex rel. Durkin v. County of San Diego*,
300 F. Supp. 3d 1107 (S.D. Cal. 2018).....18

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .....14

*Hagood v. Sonoma Cty. Water Agency*,
81 F.3d 1465 (9th Cir. 1996) .....9

*United States ex rel. Hendow v. Univ. Phoenix*,
461 F.3d 1166 (9th Cir. 2006) .....17

*United States ex rel. Hochman v. Nackman*,
145 F.3d 1069 (9th Cir. 1998) ....................18

*Lesnik v. Eisenmann SE*,
374 F. Supp. 3d 923 (N.D. Cal. 2019) ....................6

*United States ex rel. Mateski v. Raytheon Co.*,
816 F.3d 565 (9th Cir. 2016) ....................7, 9, 10

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ....................6

*United States ex rel. Relator LLC v. Baxter*,
2025 WL 1343076 (N.D. Cal. May 8, 2025) ....................14, 15, 17

*United States ex rel. Relator LLC v. Kellogg*,
2025 WL 897439 (S.D. Cal. Mar. 24, 2025) ....................2, 3, 10, 15, 16

*United States. ex rel. Relator LLC v. Umansky*,
2025 WL 873015 (C.D. Cal. Jan. 14, 2025) ....................19

*United States ex rel. Relator, LLC v. Kootstra*,
2024 WL 3666470 (E.D. Cal. Aug. 6, 2024) ....................2

*Rockwell Int'l Corp. v. U.S.*,
549 U.S. 457 (2007) ....................12

*United States ex rel. Rose v. Stephens Inst.*,
909 F.3d 1012 (9th Cir. 2018) ....................18

*United States ex rel. Rosner v. WB/Stellar IP Owner, LLC*,
739 F.Supp.2d 396 (S.D.N.Y. 2010) ....................8

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
563 U.S. 401 (2011) ....................8

*Silbersher v. Valeant Pharms. Int'l, Inc.*,
89 F.4th 1154 (9th Cir. 2024) ....................7, 8

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ....................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ....................6

*United States. v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ....................7, 17, 19

*United States of America et al v. Steven Sunshine et al.*, Case No. 8:23-CV-00134 (C.D. Cal.) .......... 3, 10

*United States. v. Villaspring Health Care Center, Inc.*, 2011 WL 6337455 (E.D. Ky. Dec. 19, 2011) .......... 19

**Federal Statutes**

CARES Act, Pub. L. No. 116-136, 132 Stat. 3442 .......... 17

False Claims Act, 31 U.S.C. §§ 3729–3733 .......... 2, 6, 7, 8, 10, 11, 17, 18

Inspector General Reform Act of 2008, Pub. L. No. 110-409, 122 Stat. 4302 .......... 4

**Regulations**

13 C.F.R. § 120.110 .......... 16, 17

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .......... 5

Fed. R. Civ. P. 8(a) .......... 5, 6, 17, 19

Fed. R. Civ. P. 9(b) .......... 7, 12, 13, 14, 15, 17, 19

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Relator filed this FAC following the Court's September 15, 2025 Order (the "Order"), granting Defendants' motion to dismiss the original Complaint based on the Public Disclosure Bar of the False Claims Act ("FCA").

While Relator has attempted to repackage its Complaint, the core facts alleged—the existence of the loan, its forgiveness, and Bighorn's supposed ineligibility—remain unchanged and continue to be based solely on public sources, as the Court has already determined. To get around this, Relator introduces speculative conclusions copied verbatim from its complaints against other country clubs—relying on assumptions about the clubs' and their members' supposed wealth and the alleged use of loan proceeds for ineligible expenses. *Compare* FAC, ¶¶ 4, 43-53 *with* Ex. H, ¶¶ 4, 40-49. Lacking any insider knowledge about the country clubs it sued *en masse*, it comes as no surprise that the FAC omits any specific allegations regarding Bighorn or its members' finances or how the loan proceeds were used. Thus, for the same reasons the Court dismissed the Complaint based upon the Public Disclosure Bar, the FAC should be dismissed as well.

As stated in the previous Motion to Dismiss, this action is one of many FCA cases filed by Relator, a self-styled "professional relator" entity created solely to file FCA lawsuits against companies that obtained PPP loans during the COVID-19 pandemic. Relator's only members are attorneys Anoush Hakimi and Peter Shahriari, and its listed address is that of their law firm, the Law Office of Hakimi & Shahriari. Newborn Decl., Exs. E-F.

Relator and its attorney-members are not whistleblowers in any meaningful sense. They have no firsthand knowledge of Defendants, were never employed by Bighorn, and have no other discernable connection to them. Rather, under the guise of this corporate shell, these attorneys merely *pose* as whistleblowers to file generic FCA lawsuits against companies with which they have no affiliation or insider information. Their complete lack of independent knowledge regarding Defendants is readily apparent from the vague, conclusory nature of the FAC's

allegations as well as the fact that their allegations against the country clubs they sue are nearly identical. The limited facts included in the FAC derive from publicly available information regarding COVID-19 relief loans mined from government and news websites like PandemicOversight.gov, https://data.sba.gov/dataset/ppp-foia, and ProPublica.org. Relator then rebrands this data as purported insider knowledge to support a series of opportunistic lawsuits—an overt abuse of the FCA statute for personal financial gain. This is exactly the type of parasitic litigation that the FCA's Public Disclosure Bar is designed to prevent and the FAC should be dismissed for this reason alone. 31 U.S.C. § 3729.

Indeed, in its Order, the Court ruled that this case is precluded by the Public Disclosure Bar and that Relator is not an original source. This Court's ruling followed those of other courts that similarly dismissed these identical, bogus FCA complaints filed by Relator for these very reasons. *See, e.g., United States ex rel. Relator, LLC v. Kootstra*, 2024 WL 3666470 (E.D. Cal. Aug. 6, 2024) (ruling that Relator's complaint should be dismissed based upon the "public disclosure bar"); *United States ex rel. Relator LLC v. Kellogg*, 2025 WL 897439, at *3 (S.D. Cal. Mar. 24, 2025) ("Kellogg") (same).

A review of the amendments made to the original Complaint reveal that Relator failed to heed the Court's ruling on the original Motion to Dismiss, as Relator added no non-conclusory facts to plead around the Public Disclosure Bar. Undoubtedly, this is because Relator has no non-public information. Rather, in clear disregard of the Court's ruling and the established case law cited by the Court therein, Relator believes its compilation of information from government and news sources—with the injection of speculation and innuendo copy-and-pasted from its other FCA complaints—qualifies it as an FCA relator. The Court disagrees. Order at p. 8 ("The FCA does not reward mere compilation of public records. *Allergan*, 46 F.4th at 994 (explaining that the bar exists to prevent actions by those with no significant information of their own to contribute).")

Even setting aside the fatal defects that this action is precluded by the Public Disclosure Bar and that Relator is not an original source, the FAC also fails to state a viable claim under the FCA. Its bare allegations fall well short of Rule 9(b)'s heightened pleading standard for fraud.

Further, it contains no specific allegations at all against Defendants Cardinalli and Curtis to suggest they personally committed any fraudulent act warranting their inclusion as defendants in this case. These deficiencies are not curable by amendment—particularly in light of the Public Disclosure Bar, which independently compels dismissal.

For these reasons, Defendants respectfully request that the Court dismiss the FAC with prejudice.

## II. STATEMENT OF FACTS

### A. Background

This suit was brought by a serial relator, "Relator LLC" on January 23, 2023. According to the California Secretary of State website, Relator is comprised solely of attorneys Anoush Hakimi and Peter Shahriari, and the address of Relator is one and the same as the Law Office of Hakimi & Shahriari. Newborn Decl., Exs. F-G. Relator has filed multiple similar FCA suits against companies to which Relator has no connection, alleging the companies violated the FCA in taking out PPP loans in relation to the COVID-19 pandemic. *See, e.g., United States of America et al v. Steven Sunshine et al.*, Case No. 8:23-cv-00134 (C.D. Cal.) ("Sunshine"); *Kellogg* at * 3.

Relator's FAC against Defendants contains no allegations establishing any connection between Relator and Defendants. Rather, the FAC alleges in bare-bones fashion that the Defendants violated the FCA by receiving a PPP loan on behalf of Bighorn, despite its supposed ineligibility for such a loan as a private club that allegedly limits membership for reasons other than capacity. Relator speculates that Bighorn had no economic need for the loan since *presumably* all of its members were economically unaffected by the pandemic and were wealthy enough to continue paying membership dues. Relator further alleges that as Bighorn's CEO and CFO, respectively, Defendants Cardinalli and Curtis must have known that Bighorn was ineligible for a PPP loan under the emergency legislation passed during the COVID-19 pandemic.

### B. PandemicOversight.gov, the U.S. Small Business Administration ("SBA"), and ProPublica Publish Information Relating to Bighorn's PPP Loan

PandemicOversight.gov is a government website maintained by the federal government's

Pandemic Response Accountability Committee of the Council of the Inspectors General on Integrity and Efficiency, and is publicly available. *See* Inspector General Reform Act of 2008, Pub. L. 110-409, 122 Stat. 4302. Prior to July 14, 2025, the facts alleged in the FAC relating to Defendants' PPP loan were publicly available on a webpage titled "PPP Borrower Search" upon searching for "Bighorn Golf Club."[1] Specifically, the search results showed that on April 12, 2020, Bighorn was approved for one PPP loan in the amount of $2,582,432 and that it is in the "Arts, Entertainment, and Recreation" industry. Newborn Decl., Ex. A (excerpt from https://www.pandemicoversight.gov). The website likewise disclosed other information about the PPP loan—more information than FAC contains: the loan approval date; the lender; the amount forgiven; the loan forgiveness date; the number of jobs reported; the number of loans; the spending category; and the industry. *Id.* Following July 14, 2025, much of this loan information is still available via Excel files found on the SBA website. https://data.sba.gov/dataset/ppp-foia (Excel file: "public_150k_plus_240930.csv").

The news website, ProPublica.Org, similarly maintains a publicly available database of PPP loan recipients and publishes the same information about Bighorn's PPP loan as the government Website. *Id.*, Ex. C (https://projects.propublica.org/coronavirus/bailouts/loans/bighorn-golf-club-3903717109).

**C. Forbes Publishes Information Concerning Bighorn Being a "Private Club"**

Multiple news sites have published articles concerning the Bighorn's private nature. For example, an article published on Forbes.com on June 17, 2019, titled "How Bighorn Golf Club

[1] On information and belief, Relator utilized the information on this website to craft its Complaint. Defendants' counsel located the information concerning Defendant Bighorn's loan on this webpage. Unexpectedly, on July 14, 2025, the government disabled the "PPP Borrower Search" function. https://www.pandemicoversight.gov/ ("Starting July 14, 2025, the following pages will no longer be available but you'll still be able to download all the data. -Dashboards & Datasets -Agency, State, and Program pages -PPP Borrower Search").

Nonetheless, PandemicOversight.gov still links to the SBA website, where Excel files with the same loan information for PPP loan recipients can be downloaded. https://pandemicoversight.gov/data-interactive-tools/dashboards-datasets ("Paycheck Protection Program (PPP). . . Managed by the Small Business Administration. Data download (on SBA website)"; https://data.sba.gov/dataset/ppp-foia (Excel file: "public_150k_plus_240930.csv").

Maintains A Five-Star Lifestyle For Its Members," states multiple times that Bighorn is a private club: "Over the past 23 years, Bighorn Golf Club, located about 15 miles east of Palm Springs in Palm Desert, California, has evolved into one of the top **private residential golf club** communities in the country, thanks to the vision and leadership of chairman and managing director R.D. Hubbard" and "Described as a **private community within a private club**, resting on Highway 74 above Palm Desert, **club membership is exclusive to Bighorn property owners**." Newborn Decl., Ex. D (https://www.forbes.com/sites/ellenparis/2019/06/17/bighorn-golf-club-a-five-star-lifestyle-evolved-from-a-vision/) (emphasis added).

### D. The Court Grants Defendants' Motion to Dismiss the Complaint

Relator filed the Complaint under seal on January 23, 2023. On March 21, 2025, the United declined to intervene in this case, and the Complaint was unsealed. Defendants filed a Motion to Dismiss Relator's Complaint. On September 15, 2025, the Court granted the motion, ruling that the case is barred by the Public Disclosure Bar and that Relator is not an original source. *See generally*, Order. In footnote 6 to its ruling, the Court expressed skepticism that Relator could offer facts to overcome the Public Disclosure Bar. *Id.*, FN 6.

## III. LEGAL STANDARD

### A. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") permits dismissal for "failure to state a claim upon which relief can be granted." F.R.C.P. § 12(b)(6). To state a claim for relief, a pleading "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.*, § 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting F.R.C.P. § 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

When ruling on a motion to dismiss, the Court must evaluate the complaint as a whole, along with matters subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court is not obligated to accept as true allegations contradicted by facts that are judicially noticeable. *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 937 (N.D. Cal. 2019).

**B. The False Claims Act**

"The FCA creates civil liability for 'any person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.'" *United States v. Allergan, Inc.*, 46 F.4th 991, 993 (9th Cir. 2022) (quoting 31 U.S.C. § 3729(a)(1)). "A private person, known as a qui tam relator, may bring a civil action under the FCA in the name of the U.S. government." *Id.* at 994 (citing 31 U.S.C. § 3730(b)). "The government may proceed with the action or decline to take over the action; if the government declines, then the relator can still pursue the action." *Id.* (citing 31 U.S.C. § 3730(b)(4)). "The FCA incentivizes whistleblowers to come forward by offering successful relators up to thirty percent of the recovery." *Id.* (citing 31 U.S.C. § 3730(d)).

To determine whether an FCA claim is precluded by the Public Disclosure Bar, courts employ a two-step inquiry. *United States ex rel. Calva v. Impac Secured Assets Corp.*, 2018 WL 6016152, at *3 (C.D. Cal. June 12, 2018). "First, the Court must determine whether there was a prior public disclosure of the allegations or transactions underlying the qui tam suit through one of the enumerated sources." *Id.* An "allegation" refers to a prior "direct claim of fraud," whereas

a "transaction" refers to the disclosure of "facts from which fraud can be inferred." *Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1167 (9th Cir. 2024). Second, if there has been a qualifying public disclosure, then the court should "determine whether the relator is an 'original source' within the meaning of the statute." *Id.*

FCA actions are subject to the heightened pleading standard set forth in FRCP 9(b). *United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011). Rule 9(b) requires that a party "state with particularity the circumstances constituting fraud or mistake." F.R.C.P. § 9(b). As the Ninth Circuit has explained, fraud allegations must be detailed enough to put defendants on notice of the specific conduct alleged to be fraudulent, allowing them to mount an appropriate defense rather than simply denying wrongdoing. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Accordingly, Rule 9(b) demands that a relator allege "the who, what, when, where, and how of the misconduct charged," including what made a statement false or misleading and why it was false. *United States. v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016).

## IV. ARGUMENT

The FAC should be dismissed with prejudice because it is precluded by the Public Disclosure Bar, Relator is not an original source, and the FAC's conclusory and speculative allegations fail to meet the heightened pleading standard of FRCP 9(b).

### A. The FCA Claim is Precluded by The Public Disclosure Bar

The FCA allows relators with valuable whistleblower-type information to assist the United States government in recovering funds. However, Congress expressly intended to prevent recovery by "parasitic" plaintiffs "who have no significant information of their own to contribute." *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 577 (9th Cir. 2016). For this reason, Congress instituted a "Public Disclosure Bar," codified in 31 U.S.C. § 3730(e)(4)(A), mandating courts to dismiss an action "if substantially the same allegations or transactions… were publicly disclosed" by the government or from the news media, unless the relator is an "original source" of the information. 31 U.S.C. § 3730(e)(4)(A).

The Public Disclosure Bar is triggered when: (1) the disclosure at issue occurred through

one of the channels specified in the statute; (2) the disclosure was public; and (3) the relator's action is substantially the same as the allegation or transaction publicly disclosed. *Id.*; *Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1167 (9th Cir. 2024). The Supreme Court has held that the FCA's Public Disclosure Bar is applied with a "generally broad scope," with both the sources of disclosure and the terms "allegations or transactions" interpreted expansively. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 408 (2011).

Here, Relator pleads no insider information regarding these Defendants, which explains why the FAC is replete with conclusory allegations and contains very few facts. What few facts are included in the FAC have all been publicly disclosed *by the federal government* through *public channels* such as the government websites, PandemicOversight.gov and https://data.sba.gov/dataset/ppp-foia, which qualify as a federal "report" for purposes of the public disclosure bar. *See United States ex rel. Rosner v. WB/Stellar IP Owner, LLC*, 739 F.Supp.2d 396, 405, 407 (S.D.N.Y. 2010) (holding that a "database available on a government website" can qualify as a "report" under the public disclosure bar when "readily available," "free," and "easily navigable").

**As the Court already found, "there is no dispute that the information regarding Bighorn's PPP loan was disclosed through multiple statutory channels."** Order at p. 5 (Emphasis added). First, prior to July 14, 2025, searching "Bighorn Golf Club" on PandemicOversight.gov revealed that Bighorn was approved for a PPP loan on April 12, 2020 in the amount of $2,582,432. Newborn Decl., Ex. A. The website also published, inter alia, the date the loan was approved, the lender, the loan amount forgiven, the date the loan amount was forgiven, the number of jobs reported, the number of loans, the spending category, and the industry (Golf Courses and Country Clubs sector of the Arts, Entertainment and Recreation industry). *Id.* Much of the loan information is also found on the SBA's website, https://data.sba.gov/dataset/ppp-foia, by clicking on the Excel file, titled "public_150k_plus_240930.csv". The Court ruled that PandemicOversight.gov also qualifies as "news media" under 31 U.S.C. § 3730(e)(4)(A)(iii). Order at p. 6.

Second, as the Court found, the PPP loan and recipient information was published on ProPublica.org, another qualifying "news media." Order at p. 5. Upon searching "Bighorn Golf Club" on this news website, one will find that ProPublica.org has published the same information about Bighorn's PPP loan as PandemicOversight.gov (and https://data.sba.gov), which Relator is believed to have used to draft its FAC. Newborn Decl., Ex. C.

Third, as the Court found, the SBA regulations governing PPP eligibility were themselves publicly available on the SBA's website and published in the Federal Register, which specifically disqualified private clubs and businesses that restrict membership for reasons other than capacity, like Bighorn. Order at p. 6.

Fourth, as the Court found, Forbes published articles describing Bighorn as one of the most exclusive country clubs in the nation—a "private community within a private club"—emphasizing its private membership model and luxury amenities. *Id.*

In other words, Relator is *not* a true whistleblower. Rather, Relator has merely availed itself of *public* information published on government and news websites and then layered on conclusory allegations about Defendants' supposed fraudulent intent, in an attempt to piece together an FCA complaint. This is precisely the type of parasitic suit that public-disclosure bar was designed to prevent.

Relator insists that this case should survive the Public Disclosure Bar because none of the above sources alleged that Defendant's loan was *fraudulent*. However, the Public Disclosure Bar does not require "an explicit '*allegation' of fraud*" in the prior disclosures. *Mateski*, 816 F.3d at 571 (quoting *Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1473 (9th Cir. 1996)) (emphasis added). Rather, where "the material elements of the allegedly fraudulent transaction are disclosed in the public domain," the public disclosure bar applies. *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000). In other words, "[t]hat the disclosed transactions themselves may not have pointed directly to any wrongdoing is simply of no moment." *Id.* at 1245. The public disclosure of the underlying facts in Relator's FAC on PandemicOversight.gov, https://data.sba.gov, and Propublica.org is sufficient to show that, at

minimum, the transactions underlying the alleged fraud were publicly disclosed. Indeed, as the Court already ruled, "The FCA does not reward mere compilation of public records. *Allergan*, 46 F.4th at 994 (explaining that the bar exists to prevent actions by those with no significant information of their own to contribute)." Order at p. 8.

Similarly, even if the Court finds that not *all* allegations in the FAC derive from information published on the above websites, it is still of no help to Relator. In the Ninth Circuit, "for a relator's allegations to be based upon a prior public disclosure, the publicly disclosed facts need not be identical with, but only *substantially similar* to, the relator's allegations." *Mateski*, 816 F.3d at 573 (emphasis added). In the Ninth Circuit, the following formula is used to determine substantial similarity:

> [I]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed.

*United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 571 (9th Cir. 2016).

Here, the Court ruled in its Order that the public sources create an inference of fraud:

> In this case, "X" is the fact that Bighorn received a multimillion-dollar PPP loan by completing the application and certifying its accuracy and Bighorn's eligibility. That fact was explicitly disclosed by PandemicOversight.gov., SBA's website, and ProPublica. See Newborn Decl. ¶¶ 3, 5, Exs. A, C. "Y" is the fact that Bighorn is an exclusive private club, ineligible under the SBA's published rules. That fact was disclosed through a nationally-distributed 2019 news article describing Bighorn as a private, invitation-only country club, as well as through the SBA regulations themselves. See id. ¶¶ 4, 6, Exs. B, D. When these facts are combined, the inference of fraud ("Z") naturally follows: Bighorn applied for and received a PPP loan despite being ineligible.

Order at p. 7.

The Court's ruling followed established precedents against this same Relator who brought nearly identical suits in this and other district courts in California. *See, e.g.*, *Sunshine*; *Kellogg*, at *3.

/ / /

### B. Relator is Not an Original Source

Relator, an attorney-led entity formed for the sole purpose of "whistleblowing" to file boilerplate FCA actions, is not an "original source" of the information contained in the FAC; thus, the FAC must be dismissed. An "original source" means an individual who either "prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based," or "who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B). Relator is neither.

The Court expressed skepticism that Relator could provide facts establishing that it is an original source. Order at FN 6. The Court's skepticism was correct, as Relator has done nothing to cure this defect. Nowhere in the FAC does Relator add any facts to address the Court's concern that "Relator's Complaint does not allege that it had any non-public, independent knowledge of Bighorn's loan application or financial operations. The Complaint does not refer to, for example, access to internal documents, insider communications, or employees. Instead, Relator appears to rely only on the publicly accessible information discussed above." Order at p. 8.

As a matter of law, Relator cannot be an original source because it is a corporate entity that did not exist until May 31, 2022—over two years *after* the alleged fraud occurred. Nor does the FAC plead that the LLC or its attorney members were ever employed by or otherwise had any relationship with any of the defendants. In fact, Relator has not even attempted to plead how it – an entity that came into existence after the fraud allegedly occurred – could possibly have had insider, whistle blower-type information about Defendants or that it provided any such information to the government before any public disclosure. 31 U.S.C. § 3730(e)(4)(B)(i). "[T]o prove independent knowledge relators have to show they had relevant evidence of fraud *prior* to the public disclosure." *Amphastar Pharms. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 705 (9th Cir. 2017)(emphasis added). Relator cannot do so.

Courts have routinely determined that a relator such as the one here, who was never

employed by Defendants, simply does not have the type of independent knowledge required by statute. *See Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 475 (2007) (holding relator could not possess the required independent knowledge to qualify as an original source when it was not employed by the company at the time the alleged fraud occurred.); *See United States ex rel. CKD Project, LLC v. Fresenius Medical Care Holdings, Inc.*, 551 F. Supp. 3d 27, 45 (E.D.N.Y. 2021) ("[A]s [a corporate] entity that has never been involved with [defendant] prior to the filing of this action, and whose information is wholly derived from an anonymous third party and public disclosures, Relator, by definition, cannot have either direct or independent knowledge of the alleged fraud.") (internal citations omitted); *United States ex rel. Aryai v. Skanska*, 2019 WL 1258938, at *5 (S.D.N.Y. Mar. 19, 2019) (relator was not an original source when source of information was a third party).

Because Relator is not an original source, the claims in the FAC are barred by the public disclosure bar and must be dismissed with prejudice.

**C. Relator's New Fraud Allegations are Conclusory and Derivative of the Original Allegations**

In addition to the central allegation concerning Defendants' purportedly false Eligibility Certification, the FAC also asserts several other "false" certifications related to its PPP loan borrowed from its complaints against other country clubs. *See* Ex. I. However, Relator failed to plead these additional allegations with the particularity required under FRCP 9(b).

1. <u>Alleged False Use of Proceeds Certification.</u>

The FAC alleges multiple times the conclusion that Defendants' Use of Proceeds Certification in the original application was false.

Yet the FAC offers *no* factual allegations to support this claim—only the bare assertion that Bighorn failed to use the funds for the required purposes. FAC, ¶ 65. Indeed, the FAC offers not a single factual allegation explaining how the funds were used or how they were used in violation of the PPP guidelines. *See id*. The closest the FAC comes to offering a rationale for this conclusion is a separate conclusory allegation that Bighorn must not have used the loan proceeds

appropriately because it supposedly did not need the money. *Id.* However, it does not logically follow that the absence of financial need means the funds Bighorn received from the government were not used for permissible purposes. Relator's reliance on conclusory statements, without any factual foundation, fails to meet the pleading standards set forth in *Twombly*, *Iqbal*, and Rule 9(b)'s particularity requirement.

2. Alleged False Loan Forgiveness Certification

The FAC further alleges that Defendants submitted a false certification in their PPP loan forgiveness application. Yet again, the FAC merely recites the certification requirements under the PPP (see FAC ¶¶ 34–36, 46–47), followed by another unsupported conclusion that Defendants did not use the loan proceeds as certified. *See* FAC ¶ 48. These bare assertions, lacking any factual foundation, are likewise insufficient under *Twombly*, *Iqbal*, and Rule 9(b).

Furthermore, the allegations about a false loan forgiveness certification are derivative of and dependent on the central claim that Bighorn was ineligible for a PPP loan because it operated as a private club that restricted membership for reasons unrelated to capacity.

3. Alleged False Economic Necessity Certification.

On March 27, 2020, Congress enacted the PPP program, and Bighorn's loan application was approved on April 12, 2020, only a few weeks after governmental mandates of shutdowns, stay-at-home orders, and declarations by public health authorities of a global pandemic and public health emergency due to COVID-19. Despite the economic uncertainty of the foregoing circumstances and the likely economically disastrous consequences of the pandemic, Relator opines:

> [B]ecause its revenues are derived mainly from costly membership dues paid by affluent members, Bighorn CC faced no economic uncertainty during the COVID-19 pandemic and required no payroll support and needed no emergency access to a taxpayer subsidized influx of operating capital, or any other economic assistance, from the federal Government. . . . Bighorn CC *benefitted* from the shutdowns, since it wealthy membership found themselves with more time to enjoy the benefits of their private membership at their private country club and were able to spend additional dollars at the club—Bighorn CC's secondary source of revenue generation.

FAC, ¶¶ 4-5.

The foregoing amounts to conclusory, inherently vague speculation about Bighorn *and all of its members'* financial condition at the time Bighorn applied for a PPP loan. They allow, at best, for an inference of "the mere possibility of misconduct," which is not sufficient under *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and they do not meet the specificity requirements of Rule 9(b). *See also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (the court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

As a substitute for actual factual allegations about the specific financial condition of Bighorn at the time of its PPP loan application, Relator resorts to conclusory and speculative labels to describe the financial condition of all members of Bighorn as uniformly "affluent" and "wealthy." FAC, ¶¶ 4-5.

Starting from speculative allegations—based on stereotypes about all Bighorn members—Relator takes an additional unsupported leap by asserting that, as of late March or early April 2020, when Bighorn applied for its PPP loan, Bighorn (with approximately 288 employees at the time) was not financially at risk because it received membership dues. Relator further speculates—without any factual support—that regardless of the evolving pandemic, its economic impact globally, nationally, or locally, or its effect on Bighorn's operations, employees, members, or their families, Bighorn's future financial condition could be predicted with absolute certainty and would remain unaffected. On that basis, Relator concludes—again without factual support—that Bighorn's "good faith" Economic Necessity Certification was knowingly false.

Of course, Relator does not know the identity of Bighorn's members much less that they would all be unaffected economically by the pandemic. Nor does Relator know whether the members would (or did) continue to pay dues to a non-essential business like a country club and congregate at a country club in defiance of lockdowns and the obvious risk to their health during the pandemic.

Based upon Rule 9(b), in *United States ex rel. Relator LLC v. Baxter*, 2025 WL 1343076

(N.D. Cal. May 8, 2025), the District Court dismissed with prejudice another FCA action brought by Relator against a PPP loan borrower. In *Baxter*, as here, Relator contended that the defendants had made a false economic necessity certification, alleging: "[w]hen they applied, Defendants knew the loan was not necessary, including to support their ongoing operation of the clubs and amenities available to them, whose members who directly benefited from them were certainly able to support them if needed." *Id.*, 2025 WL 1343076 at *9.

The court rejected Relator's conclusory allegations—which mirror the claims made here regarding Bighorn's allegedly false economic necessity certification—and stressed that "Relator does not precede or follow [its] conclusory allegations with any particular facts that are sufficient to meet the requirements pursuant to Rule 9(b)." *Id.* at *10 (emphasis in original). This Court should reach the same result and dismiss the FAC with prejudice.

4. <u>Dismissal of the FAC is Supported by the Court's Decision in Kellogg</u>

The District Court's decision in *Kellogg* is instructive regarding application of the public disclosure bar in this case. In *Kellogg*, as here, Relator alleged that the private club defendant, in fact, was not eligible for a PPP loan on the ground that the club was private, for members only, and expensive; and that therefore, one can infer the club restricted membership for reasons other than capacity. *Kellogg*, at *1. As with Bighorn, the facts and transactions regarding the club defendant in Kellogg (the La Jolla Beach and Tennis Club), including that it was a private club, for members only, with expensive dues, were publicly disclosed via a government website and news media sources. *Id.* at *3-*4. Thus, the Court in *Kellogg* reasoned that the public disclosures were "substantially similar" to Relator's allegations because the publicly disclosed "X" (the fact that the defendant club obtained a PPP loan) and "Y" (the guidelines regarding prohibition on certain clubs receiving PPP loans, along with the fact that the defendant club was private, exclusive and expensive, which allowed for an inference of restricting membership for reasons other than capacity) together permitted an inference of "Z" that potential fraud had been committed. *Id.* at *4.

After the Court granted the motion to dismiss in *Kellogg*, Relator filed an amended

complaint with the same "additional" allegations that Relator added to the FAC here. Specifically, Relator's amended complaint in *Kellogg* alleged additional false certifications relating to (i) "economic necessity" for the PPP loan, and (ii) as part of obtaining forgiveness of the PPP loan, a "use of funds" certification attesting to use of the PPP loan for payroll and other business expenses. Nonetheless, the court again granted the defendant's motion to dismiss the amended complaint *without* leave to amend. As the amended complaint in *Kellog* is on all fours with the one here, this Court should similarly grant a dismissal without leave to amend.

**D. Relator Fails to State a Claim Against Bighorn**

1. Relator Fails to Sufficiently Plead Fraud

Relator, without any *specific* factual basis, states that Bighorn was categorically ineligible to receive a PPP loan. According to the FAC, Bighorn's ineligibility is based on Interim Final Rule 1, which incorporated 13 C.F.R. § 120.110's eligibility exclusions to the PPP loans, which includes private clubs that restrict membership for reasons other than capacity. Newborn Decl., Ex. B. There are three fundamental problems with this argument.

First, while PandemicOversight.gov suggested that Bighorn is a private club, Relator pleads no specific facts to satisfy the second element of this exclusion—its supposed limitation on membership based on criteria other than capacity. To be sure, in paragraph 7, Relator generically states that, "There are many restrictions to joining Bighorn CC that have nothing to do with the club's capacity." However, the type of alleged restrictions is never specified, only speculated upon. Indeed, there are no actual facts, let alone specific facts, regarding whether and how Bighorn supposedly limits membership for reasons other than capacity. Consequently, Relator has insufficiently pleaded that Bighorn is subject to the exclusion in 13 C.F.R. § 120.110.

Second, as alleged in the FAC, the Interim Final Rule that expressly incorporated 13 C.F.R. § 120.110's eligibility exclusions for PPP loans was issued on April 15, 2020, three days after Bighorn was approved for the loan. FAC, ¶ 31; Newborn Decl., Ex. B. By definition, Bighorn submitted its eligibility certification prior to the April 12, 2020 loan approval date, and prior to the April 15, 2020 effective date of the rule incorporating 13 C.F.R. § 120.110 exclusion of private

clubs that limit membership for reasons other than capacity, from receiving PPP loans. *Id.* If the eligibility rule in question was not in effect when Bighorn submitted its PPP loan application, then it is impossible for Bighorn to misrepresent its eligibility based on this rule.

To be sure, while section 1102 of the CARES Act directed the SBA to implement the PPP loan program, the PPP was established as a distinct program with its own set of rules. Notably, the CARES Act itself does not reference 13 C.F.R. § 120.110 or specify any categories of ineligible businesses. The first public reference to 13 C.F.R. § 120.110 in connection with the PPP appeared in the SBA's Interim Final Rule, which became effective on April 15, 2020.

Third, to satisfy Rule 9(b), Relator "must allege the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016). Relator has not done so. It does not allege who at Bighorn allegedly made these false statements in the PPP loan applications, who filled out the applications, or any facts related to how it knows any of the information provided is false. It makes no attempt to allege that Bighorn misrepresented or concealed the nature of its business on the loan application or identify any specific document or statement that was falsified. The FAC does not even address—let alone plead with particularity—how Bighorn, despite its alleged ineligibility, was able to secure a PPP loan from a sophisticated lender. The FAC simply does not meet the basic plausibility pleading requirement of FRCP 8(a), much less section 9(b)'s heightened pleading standard.

2. <u>Relator Fails to Allege Scienter</u>

Relator also does not sufficiently allege scienter. *Id.* To adequately plead scienter in a FCA complaint, Relator must plead facts demonstrating that defendants acted "with knowledge of the falsity and with intent to deceive." *United States ex rel. Hendow v. Univ. Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006). "But to adequately plead any one of the meanings of scienter, '[a] complaint therefore must set out sufficient factual matter from which a defendant's knowledge of fraud might reasonably be inferred.'" *Baxter*, 2025 WL 1343076 at *6. "Congress specifically amended the FCA to include this definition of scienter, to make 'firm its intention that the act not

punish honest mistakes or incorrect claims submitted through mere negligence.'" *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998). Thus, "under the False Claim Act's scienter requirement, innocent mistakes, mere negligent misrepresentations and differences in interpretations will not suffice to create liability." *United States. ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 996 (9th Cir. 2011).

The FAC includes only generic statements that because Bighorn was required to sign certain loan documents in order to have received a PPP loan, Defendants must have made false statements on those documents. *See* FAC, ¶¶ 71-76. Such conclusory allegations are insufficient to allege scienter, which requires that Relator plead that Defendant: (1) had actual knowledge of the information; (2) acted in deliberate ignorance of the truth or falsity of the information; or (3) acted in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). Relator was required to allege that the individuals submitting the loan documents had knowledge as to the false claim itself, but it has not done so. *See United States. ex rel. Durkin v. County of San Diego*, 300 F. Supp. 3d 1107, 1128-30 (S.D. Cal. 2018) (holding that relator "failed to sufficiently allege that Defendant made a false statement with deliberate ignorance or reckless disregard" because relator "fails to address how Defendant deliberately ignored or recklessly disregarded the truth or falsity of the statements; rather, Plaintiff focuses on Defendant's deliberate ignorance or reckless disregard for the requirements to obtain funding.").

Relator simply does not allege any facts suggesting that anyone knowingly provided false information on the Defendant's PPP application. Furthermore, as described above, Defendants had no reason to know of their supposed exclusion since the Interim Final Rule excluding private clubs that restricted membership for reasons other than capacity did not even come into effect until after Defendant signed and submitted the supposed false loan application. Relator has therefore failed to plead the second element of an FCA claim – scienter – and as such the FAC should be dismissed. *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1017 (9th Cir. 2018).

**E. Relator Fails to State a Claim Against Defendants Cardinalli and Curtis**

While the FAC identifies Defendants Cardinalli and Curtis as Bighorn's CEO and CFO,

respectively—information undoubtedly drawn from the California Secretary of State website—it contains no facts supporting any claim against them. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *United States ex. rel. Lee v. Corinthian Colls*., 655 F.3d 984, 997-98 (9th Cir. 2011). "A plaintiff must 'identify the role of each defendant in the alleged fraudulent scheme.'" *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see also United States. ex rel. Relator LLC v. Umansky*, 2025 WL 873015, at *4 (C.D. Cal. Jan. 14, 2025) (dismissing individual defendants where Relator engaged in "impermissible group pleading" by failing to include "any specific allegation that [the individual defendants] themselves falsely certified information in the PPP applications or participated in the fraudulent certification").

Here, there are no allegations that either Defendants Cardinalli or Curtis submitted any false claim to the government. The FAC merely alleges in pure speculative and conclusory fashion that as CEO and CFO, Defendants Cardinalli or Curtis "were aware (or should have been aware) that Bighorn CC was ineligible." FAC, ¶ 3. This allegation is even flimsier than in the original Complaint and is similarly insufficient and implausible given the broader context—a global pandemic during which emergency legislation was enacted and frequently revised. Even Relator acknowledges in the FAC that numerous changes to the PPP loan program occurred throughout the first half of April 2020. *Id.*, ¶¶ 31-32.

Relator simply has no reason to believe that Defendants Cardinalli or Curtis filled out the paperwork. In short, Relator's conclusory statements that attempt to tie Defendants Cardinalli and Curtis do not even meet the plausibility pleading standard of FRCP 8(a), let alone the heighted Rule 9(b) standard required under the FCA. *United States. v. Villaspring Health Care Center, Inc.*, 2011 WL 6337455, at *9 (E.D. Ky. Dec. 19, 2011) (complaint failed to state a claim against individual defendant where complaint "has not alleged any facts to support allegations that [individual defendant] caused the claims in question to be submitted as required by the FCA" and

noting how the complaint "barely mentions [defendant] by name."). Therefore, Defendants Cardinalli and Curtis should be dismissed from this action with prejudice.

## V. CONCLUSION

For these reasons, the Court should grant this Motion and dismiss the FAC with prejudice.

DATED: November 4, 2025

LEECH TISHMAN NELSON HARDIMAN, INC.

By: */s/ Damian J. Martinez*
Damian J. Martinez
Michael Newborn
Attorneys for Defendants Carl Cardinalli, Joe Curtis, and Bighorn Golf Club

**L.R. 11-6.2. Certificate of Compliance**

The undersigned, counsel of record for the moving party, in accordance with L.R. 11-6.1, certifies that this brief contains 6,996 words.

LEECH TISHMAN NELSON HARDIMAN, INC.

By: _/s/ Damian J. Martinez_
Damian J. Martinez
Michael Newborn
Attorneys for Defendants Carl Cardinalli,
Joe Curtis, and Bighorn Golf Club

## PROOF OF SERVICE OF DOCUMENT

**Case No. 5:23-cv-00113-HDV-DTB**
**United States of America et al v. Carl Cardinalli et al**
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to this action. My business address is Leech Tishman Nelson Hardiman, Inc., 1100 Glendon Avenue, 14th Floor, Los Angeles, California 90024.

On November 4, 2025, I served the attached documents described as:

1. **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6).**

2. **DECLARATION OF MICHAEL NEWBORN IN SUPPORT OF MOTION TO DISMISS.**

3. **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS.**

4. **[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS.**

5. **[PROPOSED] ORDER GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS.**

☒ **Via Notice of Electronic Filing (NEF):** Pursuant to controlling General Orders and Local Rules, the foregoing documents will be served by the court via NEF and hyperlink to the document. On (date) November 3, 2025, I checked the CM/ECF docket for this district court case and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kathryn Lee Boyd** lboyd@hechtpartners.com, dockets@hechtpartners.com
- **Aaron Kollitz** aaron.kollitz@usdoj.gov, usacac.civil@usdoj.gov, caseview.ecf@usdoj.gov, connie.hom@usdoj.gov

- **Kristen Leigh Nelson** knelson@hechtpartners.com, dockets@hechtpartners.com
- **Kathryn Lee Boyd** lboyd@hechtpartners.com, dockets@hechtpartners.com
- **Charles F. Dender** cdender@dicellolevitt.com, ekerrane@dicellolevitt.com
- **Michael D Newborn** mnewborn@leechtishman.com, jstieglitz@nelsonhardiman.com, tfrazier@nelsonhardiman.com, mmarkwell@nelsonhardiman.com

☐ **Via Personal Delivery, Overnight Mail, Facsimile Transmission or Email (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling Local Rules, on November 3, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ *(Federal)* – I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| Matthew J. Mocciaro | November 4, 2025 | */s/ Matthew J. Mocciaro* |
| Name | Date | Signature |