Charles F. Dender (admitted *pro hac vice*)
Madeline Harding (*pro hac vice* forthcoming)
Mollie Weiss (*pro hac vice* forthcoming)
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
cdender@dicellolevitt.com
mharding@dicellolevitt.com
mweiss@dicellolevitt.com

Kristen L. Nelson (SBN 269318)
**HECHT PARTNERS LLP**
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Tel.: (646) 502-9515
knelson@hechtpartners.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, *ex rel*. RELATOR LLC

Plaintiffs,

v.

CARL CARDINALLI, an individual, JON CURTIS, an individual, THE BIGHORN CLUB, a California nonprofit corporation, and DOES 1-10,

Defendants.

Case No. 5:23-cv-00113-HDV-DTB

Relator LLC's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss the Amended Complaint

Date: January 8, 2025
Time: 10:00 a.m.

Judge: Hon. Hernán D. Vera

Action Filed: January 23, 2023
Trial Date: Not Set.

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........ 1
II. STATEMENT OF FACTS ........ 2
III. LEGAL STANDARD ........ 3
IV. ARGUMENT ........ 3
A. The Paycheck Protection Program ........ 3
B. The False Claims Act ........ 5
C. The Public Disclosure Bar Does Not Apply ........ 6
D. The FAC Satisfies Rule 9(b) ........ 9
1. The FAC Alleges that Bighorn's Eligibility Certification was False ........ 11
2. The FAC Alleges that Bighorn's Economic Uncertainty Certification was False ........ 11
3. The FAC Alleges that Bighorn's Use of Proceeds Certification was False ........ 12
E. The FAC Adequately Alleges Scienter ........ 12
F. The FAC States a Claim Against Both Cardinalli and Curtis ........ 14
V. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burgess v. Premier Corp.*,
727 F.2d 826 (9th Cir. 1984) .......... 14

*U.S. ex rel. Calva v. Impac Secured Assets Corp.*,
No. 16-cv-1983-JVS, 2018 WL 6016152 (C.D. Cal. June 12, 2018) .......... 8

*E&E Co., Ltd. v. Kam Hing Ent., Inc.*,
429 F. App'x 632 (9th Cir. 2011) .......... 10

*U.S. ex rel. Hendow v. Univ. of Phoenix*,
461 F.3d 1166 (9th Cir. 2006) .......... 10

*U.S. ex rel. Hopper v. Anton*,
91 F.3d 1261 (9th Cir. 1996) .......... 9

*U.S. ex rel. Hochman v. Nackman*,
145 F.3d 1069 (9th Cir. 1998) .......... 13

*Mateski v. Raytheon Co.*,
816 F.3d 565 (9th Cir. 2016) .......... 1, 7

*U.S. ex rel. Miller, et al. v. Manpow LLC*,
No. 2:21-cv-5418-VAP, 2022 WL 18397530 (C.D. Cal. Sept. 14, 2022) .......... 2, 14

*Prather v. AT&T, Inc.*,
847 F.3d 1097 (9th Cir. 2017) .......... 6

*United States ex rel. Relator LLC v. David Uhler et al.*,
2:23-cv-0499-CAS-MBK, Dkt. No. 57 (C.D. Cal. Oct. 6, 2025) .......... 14

*United States ex rel. Relator LLC v. Kasam*,
2:22-cv-05198, Dkt. No. 63 (C.D. Cal. Dec. 11, 2025) (Vera, J.) .......... 10

*United States ex rel. Relator LLC, v. Kellog*,
No. 23-cv-118, 2025 WL 897439 (S.D. Cal. Mar. 24, 2025) .......... 8, 9

*United States of America ex rel. Relator LLC v. Tennyson et al.*, 2:23-cv-05887-SRM-SSC, Dkt. No. 75 (C.D. Cal. Sept. 29, 2025) ................ 6, 8

*Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 140 (2024) ................ 8, 9

*U.S. v. 1850 Bryant Land LLC*, No. 21-cv-5742-RS, 2023 WL 4297585 (N.D. Cal. Jun. 30, 2023) ........... 13, 14

*U.S. v. Hawthorne Mach. Co.*, No. 20-cv-1625-WQH, 2024 WL 4294878 (S.D. Cal. 2024) ...................... 10, 13

*U.S. v. Kiewit Pacific Co.*, 41 F. Supp. 3d 796 (N.D. Cal. 2014) ................................................ 7

*Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) ................................................ 10

*United States v. Allergan, Inc.*, 46 F.4th 991 (9th Cir. 2022) ................................................ 6

*United States v. Corinthian Colls.*, 655 F.3d 984 (9th Cir. 2011) ................................................ 3, 15

**Statutes**

15 U.S.C. § 645 ................................................ 4

18 U.S.C. § 1001 ................................................ 4

18 U.S.C. § 1004 ................................................ 4

18 U.S.C. § 3571 ................................................ 4

31 U.S.C. §§ 3729 *et seq.* ................................................ *passim*

31 U.S.C. § 3730(e)(4) ................................................ 6, 7

**Other Authorities**

"CARES" Act., Pub. L. No. 116-136 ................................................ 3, 4

Fed. R. Civ. P. 12(b)(6) ................................................ 1

Fed. R. Civ. P. 9(b) ................................................ *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Plaintiff-Relator, Relator LLC ("Plaintiff"), respectfully submits this Memorandum of Points and Authorities in opposition to Bighorn Golf Club ("Bighorn"), Carl Cardinalli ("Cardinalli"), and Joe Curtis's ("Curtis") (together, "Defendants") Motion to Dismiss the Amended Complaint (the "FAC") under Federal Rule of Civil Procedure 12(b)(6) ("Defendants' Motion" or "Defs.' Mot."). Defendants' Motion must be denied because there has been no public disclosure regarding the specific allegations (the fraudulent nature of the disclosed transaction) made in the FAC, the FAC satisfies the requirements of Federal Rule 9(b), the FAC adequately alleges that Defendants acted with scienter, and the FAC states a claim against both Cardinalli and Curtis.

*First*, the public disclosure bar does not apply to this case because Defendants fail to point to either a single source or a related set of sources that disclose Plaintiff's allegations or the fraudulent nature of the transaction at issue in this case. Using the Ninth Circuit's public disclosure test of X + Y = Z, Defendants boisterously try and convince this Court that X alone equals Z. What Defendants do not point to—because they cannot point to it—is the presence of any qualified, single public disclosure of the fraudulent aspects of the transaction: that 1) Bighorn was a private golf club that restricts its membership for reasons other than capacity and did not face economic uncertainty during the COVID-19 pandemic, and 2) Bighorn applied for and received both the PPP First Draw Loan and, subsequently, forgiveness on that PPP First Draw Loan. That is, Defendants do not—because they cannot—demonstrate that both the X and the Y components of the Ninth Circuit's equation test exist in any of the sources they have identified. Simply stated, Defendants do not point to any public disclosure of "facts from which fraud can be inferred." *United states ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 571 (9th Cir. 2016) ("A

transaction warranting an inference of fraud is one that is composed of a misrepresented state of facts plus the actual state of facts.”).

*Second*, Plaintiff's allegations in the FAC (i) that Bighorn's CEO and CFO knowingly and willfully submitted—or knowingly and willfully caused to be submitted—Bighorn's fraudulent application for the PPP First Draw Loan, and (ii) that Bighorn's CEO and CFO knowingly and willfully submitted—or knowingly and willfully caused to be submitted—Bighorn's subsequent application for forgiveness on that PPP First Draw Loan more than satisfy both Federal Rule 9(b) and the scienter requirements for both Bighorn and the Individual Defendants (Cardinalli and Curtis). Simply stated, the CEO and CFO of a private golf club that restricts its membership for reasons other than capacity (the who) knew or should have known that they ran a private golf club that restricts its membership for reasons other than capacity (knowledge), and knew or should have known that private clubs that restrict membership for reasons other than capacity were generally excluded from participating in the PPP, and yet submitted the application (the what and the when), received the money Bighorn was not entitled to and did not need, and subsequently applied for forgiveness on that improperly taken loan, converting the loan into a Government grant (the why). *See U.S. ex rel. Miller, et al. v. Manpow LLC*, No. 2:21-cv-5418-VAP, 2022 WL 18397530, at *7 (C.D. Cal. Sept. 14, 2022).

## II. STATEMENT OF FACTS

This is an FCA action to recover treble damages and civil penalties against Defendants, who defrauded the Small Business Administration (“SBA”) in connection with Bighorn's application for and receipt of $2,582,432 in COVID-19 pandemic-related Paycheck Protection Program (“PPP”) funding (the “First Draw Loan”) in 2020 and the subsequent forgiveness—in its entirety—of that First Draw Loan in June 2021.

Bighorn applied for a PPP First Draw Loan in early April 2020. (ECF No. 54, ¶ 8.) Cardinalli (Bighorn's CEO) and Curtis (Bighorn's CFO) submitted First Draw Loan application, or caused that application to be submitted, despite knowing that Bighorn was ineligible to participate in PPP because Bighorn was a private club that limited its membership for reasons other than capacity. (*Id.* ¶¶ 43; 59.) Defendants also knew that Bighorn did not meet the economic-necessity standard for obtaining the PPP First Draw loan. (*Id.* ¶ 44.)

Bighorn's PPP First Draw Loan was approved by the Small Business Administration on April 12, 2020, and Bighorn received the funding shortly thereafter. (*Id.* ¶ 19.) Later, Cardinalli and Curtis knowingly submitted—or caused to be submitted—the PPP First Draw Loan forgiveness application. (*Id.* ¶ 49.) That application was fraudulent because Bighorn was never eligible to receive the PPP First Draw Loan in the first place.

## III. LEGAL STANDARD

In considering a motion to dismiss, a court must accept as true all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to the plaintiff. *United States v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011). A court must determine whether the complaint contains "sufficient factual matter that taken as true, state[s] a claim for relief [that] is plausible on its face." *Id*. (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## IV. ARGUMENT

### A. The Paycheck Protection Program

On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act.[1] The CARES Act was the Government's initial

[1] Pub. L. No. 116-136, 134 Stat.

economic response to the COVID-19 pandemic, and it included the PPP,[2] which authorized up to $349 billion in forgivable loans (known as PPP First Draw Loans) to qualifying small businesses to facilitate job retention and certain other permitted business expenses.[3] These loans were to be underwritten by private banks but were funded and guaranteed by the SBA, which would then forgive (pay off) the loan balances if certain criteria were met. In April 2020, Congress authorized over $300 billion in additional PPP funding.[4] The CARES Act funding for the PPP ended on August 8, 2020. By that time, there were roughly $525 billion in PPP loans made to approximately 5.2 million businesses.

To obtain a PPP First Draw Loan, a qualifying business had to submit a loan application signed by an authorized representative, typically to a private bank which would issue the loan with minimal underwriting, subject to an SBA guarantee, and ultimately funded by the SBA. To qualify for a PPP First Draw Loan, a business had to certify on its application, among other things, that it (i) was "eligible to receive a loan under the rules in effect at the time this application [was] submitted . . ." (ii) faced economic uncertainty due to the COVID-19 pandemic; (iii) would use the PPP First Draw Loan funds to maintain its existing payroll and to cover certain qualified expenses; and (iv) would not seek forgiveness of more than 25% of the loan for non-payroll costs. PPP applicants also acknowledged that false certifications on their applications would violate federal law and be punishable by imprisonment and civil fines, including violations of: (i) 18 U.S.C. §§ 1001, 1004, 3571; (ii) 15 U.S.C. § 645; and (iii) the FCA, 31 U.S.C. §§ 3729 *et seq*.

---

[2] Regulations.gov.

[3] SBA Paycheck Protection Program ("PPP") Loan Forgiveness: In Brief, *available at*, R46397.pdf.

[4] *Id*.

**B. The False Claims Act**

The False Claims Act ("FCA") has been the Government's primary fraud fighting tool since the Civil War era and provides the Government with its main means of recovery for frauds against the public fisc. *Qui tam* provisions encourage private citizens with information about fraud (known as "relators") to sue on the Government's behalf. The FCA is intended to reach all types of fraud, without qualification, that might result in financial loss to the Government. The Government has used the FCA to combat fraud in connection with PPP loans.[5]

The FCA provides that any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," 31 U.S.C. § 3729(a)(1)(B), is liable to the United States for civil penalties "plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1).

- "Knowingly" is defined to mean "that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). No proof of specific intent to defraud is required. *Id*.
- "Claim" is defined in the statute to mean "any request or demand, whether under a contract or otherwise, for money or property" which is "presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(b)(2)(A). Alternatively, it is "any request or demand, whether under

[5] The first FCA settlement involving PPP loans was announced on September 13, 2022. The Government press release is available here: Southern District of Texas | First-ever False Claims Act settlement received from Paycheck Protection Program lender | United States Department of Justice.

a contract or otherwise, for money or property" which is "made to a contractor, grantee, or other recipient" of federal funds, if the money is spent on behalf of the Government or to advance a Government program or interest, and if the Government "provides or has provided any portion of the money or property requested or demanded," or "will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." *Id.*

- "Material" means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. §3729(b)(4).

**C. The Public Disclosure Bar Does Not Apply**

Defendants invoke the FCA's "public disclosure" provision, 31 U.S.C. §3730(e)(4). (Defs.' Mot. at 7–12.) However, Defendants fail to carry their burden to show this affirmative defense applies here.[6] *See Prather v. AT&T, Inc.*, 847 F.3d 1097, 1102 (9th Cir. 2017) (recognizing that after 2010 amendments to the FCA, the "public disclosure bar" is an affirmative defense). Despite Defendants' insinuations to the contrary (*see* Defs.' Mot. at 1; 8), there is no requirement in the FCA that a relator be an insider. The only requirement is that the relator bring forward "genuinely valuable information." *See United States v. Allergan, Inc.*, 46 F.4th 991, 994 (9th Cir. 2022); *see also United States of America ex rel. Relator LLC v. Tennyson et al.*, 2:23-cv-05887-SRM-SSC, Dkt. No. 75 at 8 (C.D. Cal. Sept. 29, 2025) ("A private person, like Relator LLC, may bring a qui tam action on the federal government's behalf as a relator if the government decides not to intervene with the action."). A relator also does not need to have been directly involved in the PPP loan

[6] Plaintiff recognizes that the Court previously held that the public disclosure bar applies to this action. (ECF No. 53 at 8.) Nevertheless, Plaintiff maintains that there was no public disclosure of "substantially the same" fraudulent transactions that are alleged in the FAC.

application, or to have directly accessed other evidence, to qualify as an original source. This is because the FCA was amended to remove the word "direct" from the original source definition. *See, e.g.*, *U.S. v. Kiewit Pacific Co.*, 41 F. Supp. 3d 796, 807 (N.D. Cal. 2014) ("[T]he removal of the word 'direct' appears to broaden the exception and permit a relator to qualify as an 'original source' of information even if that information was obtained indirectly.").

The public disclosure bar applies "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in specified channels. 31 U.S.C. § 3730(e)(4)(A). An "allegation" is a "direct claim of fraud," while a "transaction" refers to "facts from which fraud can be inferred." *Mateski*, 816 F.3d at 571. To determine if "substantially the same . . . transactions" have been publicly disclosed, the Ninth Circuit uses the following formula:

> [i]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.*, the conclusion that fraud has been committed. . . . X and Y inevitably stand for but two elements: a misrepresented state of facts and a true state of facts.

*Mateski*, 816 F.3d at 571 (cleaned up).

Defendants fail to make the *Mateski* math add up in favor of this Court ruling that the public disclosure defense applies to this case. Defendants argue that the following facts alleged in the FAC were publicly disclosed across several sources: (1) the details regarding Bighorn's PPP loan (Defs.' Mot. at 8–9); (2) SBA regulations "specifically disqualified private clubs and businesses that restrict membership for reasons other than capacity" from receiving PPP loans (*id.* at 9); and (3) Bighorn is "one of the most exclusive country clubs in the nation" and has a "private membership model and luxury amenities" (*id.*). But Defendants still fail to identify a single, qualified public disclosure that discloses both the "X" and the "Y"

information necessary to infer that Defendants committed fraud without additional information from other sources. *See Tennyson*, 2:23-cv-05887-SRM-SSC, Dkt. No. 75 at 12 ("[T]he loan information on PandemicOversight.gov alone simply does not disclose any . . . transaction of fraud.") (citations omitted).

For example, Defendants state the PandemicOversight.gov source reveals that Bighorn was approved for a PPP loan on April 12, 2020, in the amount of $2,582,432. (Defs.' Mot. at 8.) They also state the website published, inter alia, "the date the loan was approved, the lender, the loan amount forgiven, the date the loan was forgiven, the number of jobs reported, the number of loans, the spending category, and the industry (Golf Courses and Country Clubs)." (*Id.*) But this basic transactional information does not include both a "misrepresented state of facts ***and*** a true state of facts." *Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1167 (9th Cir. 2024). The misrepresented state of facts here is that Bighorn was eligible to participate in the PPP and to have received $2,582,432. But X alone does not equal Z under the Ninth Circuit's case law. Nothing Defendants point to on PandemicOversight.gov constitutes the Y: that Bighorn was a private country club that limited its membership for reasons other than capacity and was therefore ineligible to receive any funds from the PPP. The same analysis applies to the other sources Defendants attached as exhibits to their Motion—there was nothing in any of the disclosures which would have "place[d] the government on notice of the alleged fraud." *U.S. ex rel. Calva v. Impac Secured Assets Corp.*, No. 16-cv-1983-JVS, 2018 WL 6016152, at *4 (C.D. Cal. June 12, 2018).

Defendants cite to *United States ex rel. Relator LLC, v. Kellog*, No. 23-cv-118, 2025 WL 897439 (S.D. Cal. Mar. 24, 2025), as support for their public disclosure arguments. (Defs.' Mot. at 15–16.) However, the facts in *Kellog* are distinguishable from those in this Action. In *Kellog*, the defendant identified was a news article published that stated not only that the La Jolla Beach and Tennis Club

was not only a private club, but also that the La Jolla Beach and Tennis Club ***received PPP funds***. *Kellog*, 2025 WL 897439, at *3. Defendants here have not pointed to any such article that identifies Bighorn both as a private, exclusive club and as the recipient of a PPP loan.

Defendants attempt to convince this Court that a tapestry of completely unrelated facts about the underlying transaction is enough to allow them to escape liability for their fraud. It does not. *See Silbersher,* 89 F.4th at 1167, *cert. denied*, 145 S. Ct. 140 (2024).

Additionally, Defendants do not even ***attempt*** to argue there was a public disclosure of Plaintiff's claims that 1) Bighorn did not face economic uncertainty during the COVID-19 pandemic yet certified on its PPP loan application that it faced economic uncertainty, and 2) Bighorn never intended to use its PPP loan proceeds to retain workers or maintain payroll yet certified that it would do so on its PPP loan application. None of the sources Defendants have attached to their Motion reveal these facts. Therefore, regardless of whether the Court finds there was a public disclosure of the fact that Bighorn was ineligible to receive a PPP loan as a private club, the Court should decline to dismiss this action based on the public disclosure bar.

In sum, Defendants' attempt to invoke the public disclosure bar fails at every turn, and the Court should reject it.

**D. The FAC Satisfies Rule 9(b)**

The FCA imposes liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States. 31 U.S.C. § 3729(a)(1)(A); *see also U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996) ("What constitutes the FCA offense is the knowing presentation of a claim that is either fraudulent or simply false."). While fraud must be alleged with particularity, in the case of corporate defendants, "the rule may be

relaxed as to matters within the opposing party's knowledge." *E&E Co., Ltd. v. Kam Hing Ent., Inc.*, 429 F. App'x 632, 633 (9th Cir. 2011). The FAC adequately states an FCA claim as to all Defendants.

The elements of an FCA claim are: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). To allege an FCA claim, "it is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998–99 (9th Cir. 2010) (internal quotations and citation omitted). Defendants only address the first two elements in their Motion.

To survive a challenge under Federal Rule 9(b), a party must plead "allegations of fraud . . . specific enough to give [D]efendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *U.S. v. Hawthorne Mach. Co.*, No. 20-cv-1625-WQH, 2024 WL 4294878, at * 3 (S.D. Cal. 2024) (citation omitted). "This means the plaintiff must allege 'the who, what, when, where, and how of the misconduct charged.'" *Id.* Here, Plaintiff has alleged "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Id*. Plaintiff has exceeded these pleading requirements in the FAC and as such, Defendants' motion should be denied. *See United States ex rel. Relator LLC v. Kasam*, 2:22-cv-05198, Dkt. No. 63 at 9–10 (C.D. Cal. Dec. 11, 2025) (Vera, J.) (holding allegations were sufficient when complaint "allege[d] the dates that the loans were approved," and "detail[ed] which statements were allegedly false and why").

***The Who***. Plaintiff alleges in its FAC that Defendants (specifically Bighorn's CEO and CFO) knowingly submitted—or knowingly caused to be submitted—a

false and fraudulent application to the SBA for a First Draw PPP loan. (ECF No. 54, ¶ 3.) As is detailed in the FAC, Bighorn's CEO and CFO submitted that application during the start of the COVID-19 pandemic and after PPP was passed by the Congress and signed by the President and the rules for obtaining a PPP loan were published. (*Id.* ¶¶ 19; 28–35.) Moreover, Bighorn's CEO and CFO knowingly submitted—or knowingly caused to be submitted—a false and fraudulent application for forgiveness on that PPP First Draw Loan, which effectively converted the PPP First Draw Loan into a Government grant to Bighorn. (*Id.* ¶ 49.)

***The What, When, Where, and How***. Plaintiff's claims are based on several false certifications from Defendants' PPP loan and loan forgiveness applications. The FAC alleges that the PPP loan application certifications included mandatory certifications by borrowers, *inter alia*, that (1) they were eligible for the loan amount; (2) the economic uncertainty made the loan necessary to support ongoing operations of the business; and (3) the loan proceeds were used for eligible expenses. (*Id.* ¶¶ 29–30; 32; 37–40.) Borrowers were also warned as to the possibility of both civil and criminal charges for false certifications. (*Id.* ¶¶ 35; 47.)

1. The FAC Alleges that Bighorn's Eligibility Certification was False

The FAC alleges that on its loan application, Bighorn certified that it was eligible to receive a PPP loan. (*Id.* ¶ 43.) The FAC also alleges that Bighorn is a private club that restricts membership for reasons other than capacity. (*Id.* ¶¶ 3; 6–7; 60–61.) Finally, the FAC alleges that private clubs that restrict membership for reasons other than capacity were not eligible to receive PPP loans. (*Id.* ¶¶ 3; 6; 31.)

2. The FAC Alleges that Bighorn's Economic Uncertainty Certification was False

The FAC alleges that Bighorn certified on its loan application that "current economic uncertainty makes this loan necessary to support the ongoing operations"

of Bighorn. (*Id.* ¶ 44.) However, the FAC alleges that in fact, Bighorn "was faced with no economic uncertainty at all due to the pandemic and needed no assistance to maintain its payroll," and faced no liquidity crunch during the pandemic because its members were all legally required to continue paying their membership dues. (*Id.* ¶ 63.)

3. <u>The FAC Alleges that Bighorn's Use of Proceeds Certification was False</u>

Finally, the FAC alleges that on its loan application, Bighorn certified that the loan proceeds would be used "to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments." (*Id.* ¶ 64.) However, as a private club, Bighorn was prohibited from obtaining any PPP loans. Therefore, any expenditures Bighorn made using PPP loan money were not eligible expenses. Additionally, the FAC alleges that this certification was false at the time it was made because Bighorn did not need Government support to retain workers, maintain payroll, or pay for other qualified expenses. (*Id.* ¶ 65.) For example, the FAC alleges that Bighorn's grounds crew "were all deemed essential employees in California during the COVID-19 pandemic," and that outdoor activities were encouraged during the pandemic, and many of Bighorn's employees were engaged in outdoor activities. (*Id.* ¶¶ 66–68.) The FAC also alleges that when seeking forgiveness of the PPP loan, Defendants falsely reported that they spent the loan proceeds on eligible expenses, making Bighorn's loan forgiveness application and certifications false. (*Id.* ¶¶ 50–52.)

**E. The FAC Adequately Alleges Scienter**

Rule 9(b) states that Defendants' state of mind may be pled generally, without specificity. Scienter under the FCA includes three states of mind, any of which is sufficient to find liability for "knowing" acts, including: (1) actual knowledge, (2) deliberate ignorance; or (3) reckless disregard. 31 U.S.C. § 3729(b)(1)(A). In other

words, "the FCA requires no proof of specific intent to defraud. The Court of Appeals for the Ninth Circuit has further explained that the requisite *scienter* is the knowing presentation of what is known to be false, and that known to be false does not mean scientifically untrue; ***it means a lie***." *Hawthorne*, 2024 WL 4294878, at *8 (*quoting U.S. ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998) (cleaned up) (emphasis added)). Therefore, "[a]lthough the circumstances of a fraud must be pleaded with particularity, knowledge may be pleaded generally. An FCA complaint therefore must set out sufficient factual matter from which a defendant's knowledge of a fraud might reasonably be inferred." *Hawthorne*, 2024 WL 4294878 at *8 (cleaned up).

The FAC first alleges that Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment to the Government. (ECF No. 54, ¶¶ 3; 9.) Then, "in combination with additional facts," the FAC "make[s] the existence of this knowledge cogent." *U.S. v. 1850 Bryant Land LLC*, No. 21-cv-5742-RS, 2023 WL 4297585, *5 (N.D. Cal. Jun. 30, 2023). These facts include, for example, (1) that Defendants knew and understood applicable requirements to receive PPP loans, (2) Defendants falsely represented that their certifications were accurate, (3) Defendants falsely stated that they were eligible for the loan, and (4) Defendants knew inaccurate information would leave them exposed to civil and criminal penalties. (*Id.* ¶¶ 29–35; 47; 59.) Notwithstanding these mis(representations), as described above, Defendants well-knew they were ineligible for a loan because Bighorn was a private club that restricts membership for reasons other than capacity and did not apply for a PPP loan due to economic necessity. (*Id.* ¶¶ 3; 58; 59; 70; 71.) The individual defendants are sophisticated businesspeople responsible for effectively operating Bighorn and deciding to apply for the loan. (*See id.* ¶¶ 3–4; 71–75.) Bighorn could not and should not take government loan money without a thorough review of its legality. (*Id.* ¶¶

29–41.) At the least, the foregoing reflects reckless disregard and "support[s] an inference of scienter based on the circumstances." *1850 Bryant Land LLC*, 2023 WL 4297585, at * 5; *see also United States ex rel. Relator LLC v. David Uhler et al.*, 2:23-cv-0499-CAS-MBK, Dkt. No. 57, at 13–14 (C.D. Cal. Oct. 6, 2025) (finding allegations in complaint satisfied "general pleading standard for scienter" when complaint alleged defendants "knew and understood the applicable requirements to receive PPP loans," knew that country club "was ineligible for a loan because it is a restrictive members-only private club that limited membership for reasons other than capacity," knew that country club "lacked the economic necessity required for PPP loans," and that "defendants nonetheless certified eligibility and economic necessity in order to obtain PPP loans").

With respect to Cardinalli and Curtis, sophisticated business executives, recklessness, at a minimum, is met. As CEO and CFO of Bighorn when approving the loan applications, they "had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to . . . disclos[e] such facts." *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984).

In sum, the FAC adequately alleges the "the who, what, when, where, and how" of the purportedly false statements made to obtain the $2,582,432 PPP loan. *Miller*, 2022 WL 18397530, at *7.

**F. The FAC States a Claim Against Both Cardinalli and Curtis**

Defendants wrongly argue that the FAC "contains no facts supporting any claim against" Cardinalli and Curtis. (Defs.' Mot. at 19.) However, the FAC alleges that Cardinalli and Curtis were the Bighorn executives that authorized the submission of the false and fraudulent PPP loan application, and that Cardinalli and Curtis were aware (or should have been aware) that Bighorn's PPP loan application was false and fraudulent. (ECF No. 54, ¶¶ 3; 4; 43; 44; 46; 49; 62.) The FAC therefore properly "inform[s] each defendant separately of the allegations

surrounding his alleged participation in the fraud," and "identif[ies] the role of each defendant in the alleged fraudulent scheme." *Corinthian Colls.*, 655 F.3d at 997–98. The FAC's claims against Cardinalli and Curtis should not be dismissed.

**V. CONCLUSION**

For the reasons discussed above, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss the Complaint.

DATED: December 18, 2025

*s/ Charles F. Dender*
Charles F. Dender (admitted *pro hac vice*)
Madeline Harding (*pro hac vice* forthcoming)
Mollie Weiss (*pro hac vice* forthcoming)
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
cdender@dicellolevitt.com
mharding@dicellolevitt.com
mweiss@dicellolevitt.com

Kristen L. Nelson (SBN 269318)
**HECHT PARTNERS LLP**
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Tel.: (646) 502-9515
knelson@hechtpartners.com

*Attorneys for Plaintiff Relator LLC*

**<u>L.R. 11-6.2. Certificate of Compliance</u>**

The undersigned, counsel of record for Relator LLC, certifies that this brief contains 4,622 words, which complies with the word limit of L.R. 11-6.1.

DATED: December 18, 2025

*s/ Charles F. Dender*

Charles F. Dender (admitted *pro hac vice*)
Madeline Harding (*pro hac vice* forthcoming)
Mollie Weiss (*pro hac vice* forthcoming)
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
cdender@dicellolevitt.com
mharding@dicellolevitt.com
mweiss@dicellolevitt.com

Kristen L. Nelson (SBN 269318)
**HECHT PARTNERS LLP**
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Tel.: (646) 502-9515
knelson@hechtpartners.com

*Attorneys for Plaintiff Relator LLC*